IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **AARON JACKSON, #B26006,** )<br>)<br>    **Plaintiff,** )<br>)<br>vs. )<br>)<br>**WEXFORD HEALTH SOURCES, INC.,** )<br>**N.P. DEARMOND,** )<br>**N.P. MOLDENHAUER,** )<br>**ANGELA CRAIN,** )<br>**CONNIE DOLCE,** )<br>**ASST. WARDEN REICHERT,** )<br>**WARDEN WILLS,** )<br>**ASST. ADA COORDINATOR KLUMP,** )<br>**ADA COORDINATOR LAWRENCE,** )<br>**IDOC DIRECTOR HUGHES,** )<br>**and GOVERNOR PRITZKER,** )<br>)<br>    **Defendants.** ) | Case No. 25-cv-01694-SMY |

## MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Aaron Jackson, an inmate in the custody of the Illinois Department of Corrections (IDOC) currently incarcerated at Menard Correctional Center, filed this action for alleged violations of his rights under the Eighth Amendment, Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq*., and Rehabilitation Act (Rehab Act), 29 U.S.C. §§ 794-94e.[1] The Complaint (Doc. 1) is now before the Court for review under 28 U.S.C. § 1915A, which requires screening and dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. *Id*.

---

[1] Plaintiff seeks monetary and injunctive relief, which the Court construes as a request for injunctive relief *at the close of the case*. If he requires more immediate relief, Plaintiff may file a Motion for Temporary Restraining Order and/or Preliminary Injunction under FED. R. CIV. P. 65.

1

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1, pp. 1-46): Plaintiff has diabetes and suffers from serious complications associated with the disease, including vision loss and neuropathy. *Id*. at 3. He was initially diagnosed with pre-diabetes in 2018 and again in 2022, and was prescribed Metformin[2] in 2023. While on this medication, a patient's blood sugar and A1C levels must be checked on a routine basis using a test referred to as an "Accu-Check." *Id*. Due to insufficient staffing, Plaintiff's levels were not properly monitored, even while his Metformin was increased from 500 mg to 1000 mg. *Id*. at 3, 12.

A single nurse was assigned to provide medical services and medication to the 488 inmates housed on four wings during each shift. The nurses soon decided Plaintiff did not need routine Accu-Checks. There was no doctor available to run the diabetic clinic, so Plaintiff's blood sugar and A1C levels were not properly monitored and his medication was not adjusted as needed. He submitted requests for treatment with a doctor, but the nurses informed him that he was on a six-month waiting list. Because no nutritionist was on staff, Plaintiff was given a starchy diet that caused his blood sugar to spike. *Id*. at 5. He seeks a diabetic diet and Accu-Checks. *Id*. at 20.

Plaintiff's neuropathy caused recurrent nerve pain, tingling, and numbness in his extremities beginning in 2022. Without proper medical care or nutrition, Plaintiff faced the risk of additional nerve damage and limb loss. He submitted regular requests for treatment and grievances about his untreated nerve pain in 2022. However, he was not seen until May 2023. *Id*. at 8. Plaintiff was sent for an electromyography (EMG) on June 12, 2023 and November 2023. *Id*. at 5. On the way to and from the EMG, Plaintiff's hands were restrained in a "black box," and he suffered unnecessary, excruciating pain. *Id*. at 13. He still underwent nerve testing and was

---

[2] Metformin is a prescription medication used to treat high blood sugar levels caused by Type 2 diabetes. *See* https://www.mayoclinic.org/drugs-supplements/metformin-oral-route/description/drg-20067074 (Mar. 2, 2026).

informed that results would be available within two weeks of each EMG. *Id* at 8.

While waiting, Plaintiff requested a copy of his medical records to figure out for himself whether he tested positive for neuropathy. His records request was denied due to Wexford's understaffing of the medical records department. *Id*. at 6. Plaintiff also submitted grievances to report ongoing pain, tingling, and numbness in his fingers and to request the status of his test results. A nurse did not respond until May 4, 2024, and Plaintiff did not learn that he tested positive for neuropathy until July 2, 2024. *Id*. at 5-6.

Due to the delay in his diagnosis from June 12, 2023 until July 2, 2024, Plaintiff received inadequate treatment for his neuropathy. *Id*. at 6. He endured unnecessary pain and numbness in his limbs, and these symptoms persisted. Plaintiff seeks a prescription for Gabapentin to help manage his nerve pain and slow the progression of his neuropathy.[3] *Id*. at 9. He also requests a permit for use of a waist chain instead of a black box restraint. *Id*. at 20.

Plaintiff filed grievances to address these matters on November 8, 2022, August 3, 2024, and September 18, 2024. *Id*. at 9. He sent letters directly to Nurse Practitioner Dearmond, Nurse Practitioner Moldenhauer, Health Care Unit Administrator (HCUA) Crain and Dolce on December 4, 2024, May 8, 2025, and May 10, 2025. *Id*. at 10, 16. He also wrote Warden Wills, Assistant ADA Coordinator Klump, ADA Coordinator Lawrence, IDOC Director Hughes, and Governor Pritzker. *Id*. at 9, 11. He requested ADA accommodations for his diabetes/neuropathy, including waist chains, on October 5, 2024 and December 4, 2024. *Id*. at 13, 21.

For years, Plaintiff received no response to his grievances, letters, or status requests. *Id*. at 9-10. Then, in 2025, Governor Pritzker and Warden Wills responded by assuring Plaintiff that Warden Wills would work with medical staff to address his concerns. *Id*. at 14. Before his medical

---

[3] Plaintiff asks that the drug be administered as a whole pill, not as a "crush and float" medication, because it is "useless" when crushed and dissolved in liquid.

3

issues were addressed, Warden Wills wrote a letter stating all issues were resolved. *Id*. at 17. Meanwhile, Assistant Warden Reichert implemented a policy allowing prison staff to cancel medical permits for waist chains for security reasons, and Plaintiff was denied use of waist chains for non-medical reasons pursuant to the new policy. *Id*. at 14-17.

Plaintiff blames Wexford Health Sources, Inc., for causing the systemic breakdown in inmate medical care at Menard through policies, customs, and or practices aimed at reducing the cost of inmate medical care at the expense of inmate health, by: (1) understaffing the doctors, nurses, and medical records personnel; (2) denying referrals to specialists; (3) handing out inexpensive over-the-counter medication instead of prescriptions; and (4) requiring the HCUA (Crain, then Dolce) to process all medical grievances for 1,500 inmates. *Id*. at 3, 7, 11. Plaintiff claims that each one of these policies resulted in violations of his Eighth Amendment rights.

## **Discussion**

Based on the allegations, the Court designates the following claims in the *pro se* Complaint:

Count 1: Eighth Amendment claim against Defendants for denying Plaintiff adequate medical care for his diabetes/neuropathy/vision loss by failing to provide him with access to a diabetic diet, diabetic clinics, routine Accu-Checks, medications (e.g., Metformin and Gabapentin), referrals to specialists, and waist chains.

Count 2: Eighth Amendment claim against Wexford for denying Plaintiff proper medical care for his diabetes/neuropathy/vision loss through its policies, customs, and practices of (1) understaffing doctors, nurses, and medical records personnel; (2) denying referrals to specialists; (3) handing out inexpensive over-the-counter medication instead of prescriptions; and (4) requiring the HCUA to process all medical grievances.

Count 3: ADA and/or Rehab Act claim against Defendants Hughes and/or Wills, in their official capacities, for failing to accommodate Plaintiff's diabetes-related disabilities with a permit for a diabetic diet, diabetic clinic, routine Accu-Checks, and use of waist chains.

Any other claim in the Complaint not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### Count 1

An Eighth Amendment claim for inadequate medical care arises from an objectively serious medical need, such as one that has been diagnosed by a physician as requiring treatment or one where the need for treatment is obvious, and deliberate indifference by each defendant, which occurs when the defendant knows of and disregards an excessive risk of harm to the inmate. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Plaintiff's diabetes and neuropathy are sufficiently serious to support an Eighth Amendment claim, but not his vision loss because the allegations are too vague. The Complaint articulates a plausible claim of deliberate indifference to Plaintiff's diabetes and neuropathy against Defendants Dearmond, Moldenhauer, Crain, Dolce, Reichert (waist chains only), Wills, Klump, and Lawrence. Count 1 survives screening against these defendants. This claim will be dismissed against Defendants Pritzker and Hughes who played no discernible role in Plaintiff's medical care.

### Count 2

Wexford Health Sources, Inc., can only be liable for deliberate indifference if an unconstitutional policy or practice of the corporation caused a constitutional deprivation. *Shields v. Illinois Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014). It cannot be held liable for injuries caused by its employees because the doctrine of *respondeat superior* does not apply under § 1983. Plaintiff alleges the following Wexford policies, customs, or practices caused his inadequate medical care for diabetes and neuropathy: (1) understaffing the doctors, nurses, and medical records personnel; (2) denying referrals to specialists; (3) handing out inexpensive over-the-

counter medication instead of prescriptions; and (4) requiring the HCUA (Crain, then Dolce) to process all medical grievances. Count 2 will proceed against Wexford on these grounds.

### Count 3

To state a claim under the ADA, 42 U.S.C. § 12101 *et seq*., or Rehab Act, 29 U.S.C. §§ 794–94e, a plaintiff must plead facts suggesting (1) he is a qualified person with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by the entity; and (3) the denial or discrimination was because of his disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Here, Plaintiff alleges his diabetes and neuropathy qualified him as a person with a disability who was denied access to prison services, programs, and activities due to his disability and the related denial of a diabetic diet, diabetic clinic, routine Accu-Checks, medications (Gabapentin and Metformin), and waist chains. Based on Plaintiff's allegations, Count 3 survives preliminary review as an ADA and/or Rehab Act claim against IDOC Director Hughes (official capacity only). *Id*. at 670, n. 2 (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131) (proper defendant for an ADA or Rehab Act claim is the agency (IDOC) or its director in an official capacity).

### Pending Motions

Plaintiff's Motions for Recruitment of Counsel (Docs. 2 and 6) are **DENIED without prejudice**. A Court presented with a request for counsel must consider whether the indigent plaintiff has made reasonable attempts to secure counsel, and, if so, whether the difficulty of the case exceeds the plaintiff's capacity as a layperson to present it. *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff has made some efforts to find counsel by filing copies of letters he sent to six (6) attorneys. However, the Court finds that he has not yet demonstrated the need for an attorney. Plaintiff points to his diabetes, difficulty writing, lack of legal knowledge, and lack of

law library access as reasons for requesting counsel. With the help of another inmate, Plaintiff filed a coherent Complaint that survives screening on three claims. At this stage of proceedings, there is nothing for Plaintiff to do to move this matter forward. The Court will initiate service on Defendants, and this will take at least sixty days. Once all defendants answer, the Court will enter a scheduling order with specific instructions and deadlines for litigation. After that, Plaintiff may renew his request for an attorney by filing a new motion.

## Disposition

The Complaint (Doc. 1) survives screening under 28 U.S.C. § 1915A, as follows:

- **COUNT 1** will proceed against **DEARMOND, MOLDENHAUER, CRAIN, DOLCE, REICHERT (waist chains only), WILLS, KLUMP,** and **LAWRENCE**, in their individual capacities. The vision loss portion of this claim is **DISMISSED without prejudice** for failure to state a claim.

- **COUNT 2** will proceed against **WEXFORD HEALTH SOURCES, INC.**

- **COUNT 3** will proceed against **LATOYA HUGHES**, in an official capacity only.

- **ALL OTHER CLAIMS** and **DEFENDANTS** are **DISMISSED without prejudice** because the Complaint fails to state any other claim upon which relief may be granted. Defendant **PRITZKER** is **DISMISSED** without prejudice.

For Counts 1, 2, and 3, the Clerk shall prepare for Defendants **WEXFORD HEALTH SOURCES, INC., DEARMOND, MOLDENHAUER, CRAIN, DOLCE, REICHERT, WILLS, KLUMP, LAWRENCE,** and **LATOYA HUGHES (official capacity only)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay

the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply. 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues in this Order**.

Plaintiff is **ADVISED** that if judgment is rendered against them and the judgment includes the payment of costs under 28 U.S.C. §1915, they will be required to pay the full amount of the costs, even though they were granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that they are under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate Plaintiff's whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to TERMINATE GOVERNOR PRITZKER as a defendant and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act in CM/ECF**.

IT IS SO ORDERED.

DATED:   March 3, 2026            *s/ Staci M. Yandle*
                                  **STACI M. YANDLE**
                                  **Chief U.S. District Judge**

## Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.